Opinion issued November 3, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00636-CR

———————————

ISIDORO VALDEZ, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 174th Judicial District Court 

Harris County, Texas



Trial Court Case No. 1197254

 



 

MEMORANDUM OPINION

          A
jury found appellant, Isidoro Valdez, guilty of the offense of capital murder,[1] and the trial court
assessed his punishment at confinement for life.  In three points of error, appellant contends
that the evidence is legally and factually insufficient to support his
conviction and the trial court erred in denying his request to instruct the
jury on the lesser-included offense of murder and allowing the State to make an
improper argument at the close of the guilt phase of trial.

          We
affirm.

Background

          Adolfo
Gutierrez testified that in December of 2008, he lived with the complainant,
Ebodio Bautista, in a one-bedroom apartment, where Gutierrez slept on a
mattress in the living room.   On December 17, 2008, Gutierrez returned from
work and fell asleep.  He later awoke to
the sound of the front door being kicked in and saw appellant enter the
apartment carrying a “big gun.”  Appellant
approached the complainant’s bedroom and, as the complainant was exiting the
bedroom, shot him “about three times.”  Appellant
then exited the apartment and left the apartment complex in a white truck.  Gutierrez noted that he had known appellant
for about ten years, appellant went by the name “Juan,” and he had previously
seen appellant drive the same white truck. 


          Cirilo
Rodriguez testified that he lived in the same apartment as Gutierrez and the
complainant, where he also slept in the living room.  Rodriguez had been drinking beer with a
neighbor at the apartment complex when he left to purchase cigarettes at a
nearby store.  On his way to the store,
he determined that it was “too late,” turned around, and returned to the
apartment complex, where he heard “at least two” gunshots coming from his
apartment on the second floor.  After he
saw appellant leave the apartment and come down the stairs with “something in
his hand,” Rodriguez “got scared” and stayed in the apartment of a woman who
also lived in the complex.  Rodriguez
noted that he recognized appellant because he had previously worked on
construction projects with him.

          Houston
Police Department Sergeant J.C. Padilla testified that he was dispatched to the
scene of a homicide at the complainant’s apartment.  Upon his arrival, he noted that there was
“forced entry into the apartment.”  After
speaking to several neighbors, Padilla determined that appellant might be a
suspect in the homicide.  He found
appellant in the parking lot of a nearby apartment complex, sitting in a white
truck with the complainant’s wife, from whom the complainant was separated.  Appellant consented to an interview with
Padilla and a search of his residence, a two-bedroom house.  In appellant’s bedroom, Padilla found twelve unfired
.38 Special live bullets, ten unfired .357 Magnum hollow-point bullets, and one
“small caliber live round.”  He also
found a pair of pants with “a stain on it that appeared to be blood,” which he
submitted for DNA testing but never received results.  Padilla retrieved a pair of work boots from
the apartment, which he submitted along with the complainant’s front door, to a
crime lab for testing.  However, Padilla
did not receive a “definitive answer as to whether those boots were the same
boots that made the imprint on the door.” 
He noted that a surveillance video of the apartment complex parking lot revealed
that a white truck entered and left the parking lot at approximately 11:30 p.m.
on December 17.  Padilla explained that
the truck in the surveillance video was “similar in appearance” to appellant’s
truck, although the video did not reveal a license plate number.  

Padilla interviewed Rodriguez, who
was still “visibly shaken” from the incident. 
Padilla presented to Rodriguez a photospread containing a photograph of
appellant and five other men with similar physical characteristics.  Rodriguez immediately identified appellant as
the man he had seen leave the apartment after the shooting.  

Padilla interviewed Gutierrez, who
also immediately identified appellant in a photospread as the man who had
entered the apartment and shot the complainant. 
During their interview, Gutierrez indicated that he was very frightened
of appellant “because [appellant] had been asking people about him and his
belief was because he was a witness to the incident.”  Later that day, Padilla arrested appellant as
he was leaving the apartment of the complainant’s wife.

          Dr.
Merrill Hines, an assistant medical examiner at the Harris County Institute of
Forensic Science, testified that the complainant suffered from gunshot wounds
to his head, chest, and right calf.  The
wounds indicated that the shooter was one to four feet away from the
complainant at the time of the shooting. 
During the autopsy, Hines was able to retrieve bullet fragments from the
complainant’s head and chest.  On cross-examination,
Hines admitted that she was unable to conclusively eliminate the possibility of
more than one shooter.

          Mohamad
Al-Mohamad, a forensic scientist at the HPD firearms lab, testified that he
analyzed the bullets recovered from the autopsy and the complainant’s apartment.  His analysis demonstrated that the bullet
fragments recovered from the complainant’s head and chest were fired from one
gun, which was either a .38 Special revolver or a .357 Magnum revolver.   There was no conclusive evidence that the
bullet recovered from the complainant’s apartment came from the same gun, but
Al-Mohamad explained that there was “some similarity” and it could have come
from the same gun as the bullets recovered during the autopsy.  Al-Mohamad noted that the .38 Special bullets
found in appellant’s residence could be fired from a .38 Special revolver and
the .357 Magnum bullets found in appellant’s residence could be fired from
either a .38 Special revolver or a .357 Magnum revolver.        

Sufficiency of the Evidence

  In his first point of error, appellant argues
that the evidence is legally and factually insufficient to support his
conviction because Rodriguez’s testimony was “highly unreliable,” there is
“absolutely no physical evidence linking” appellant to the crime, and, no
rational jury could have found that appellant was the person who shot the
complainant.

We review the legal sufficiency of the evidence by
considering all of the evidence “in the light most favorable to the
prosecution” to determine whether any “rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Evidence is
legally insufficient when the “only proper verdict” is acquittal.  Tibbs
v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982).  Our role is that of a due process safeguard,
ensuring only the rationality of the trier of fact’s finding of the essential
elements of the offense beyond a reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which she is accused.  Id.  We now review the factual sufficiency of the evidence under the same
appellate standard of review as that for legal sufficiency.  Ervin v. State, 331 S.W.3d 49,
52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d.).  

A person commits the
offense of capital murder if he intentionally commits a murder “in the course
of committing or attempting to commit kidnapping, burglary, robbery, aggravated
sexual assault, arson, obstruction or retaliation, or terroristic threat.”  Tex.
Pen. Code Ann. § 19.03(a)(2) (Vernon 2011).  A person commits the offense of murder if he
intentionally or knowingly causes the death of an individual.  Id.
§ 19.02(b)(1).  A person commits the
offense of burglary if he “without the effective consent of the owner . . .
enters a building or habitation and commits or attempts to commit a felony,
theft, or an assault.”  Id. § 30.02(a)(3). 

In support of his
sufficiency challenge, appellant asserts that he was not the shooter of the
complainant, and he argues that Rodriguez’s testimony was “inherently
unreliable” because, on direct examination, he failed to identify appellant in
the courtroom and failed to definitively identify his own initials on the
photospread.  

Viewing the evidence
in the light most favorable to the verdict, we note that Rodriguez later explained
on re-direct examination that his initial failure to identify appellant was
because appellant was not in the courtroom at that time.  Padilla also confirmed that Rodriguez had
previously identified appellant in the photospread.  It is the function of the jury to resolve any
conflicts in the testimony and evaluate the credibility of the witnesses.  Williams,
235 S.W.3d at 750.

Additionally, Gutierrez
testified that he witnessed appellant kick down the door to the apartment
without his consent and intentionally shoot the complainant, which itself
satisfies the elements of the offenses of murder and burglary.  The testimony of a single eyewitness may be
legally sufficient to support a conviction of a criminal offense.  See
Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (upholding
conviction for attempted murder where only one witness saw appellant with gun);
Davis v. State, 177 S.W.3d 355, 358–59
(Tex. App.—Houston [1st Dist.] 2005, no pet.) (affirming conviction for
aggravated robbery where central issue involved a single witness’s
credibility); see also Proctor v. State,
319 S.W.3d 175, 185 (Tex. App.—Houston [1st Dist.] 2010, pet. struck); Lee v. State, 176 S.W.3d 452, 457–58
(Tex. App.—Houston [1st Dist.] 2004), aff’d,
206 S.W.3d 620 (Tex. Crim. App. 2006). 
Finally, although appellant argues that there is “absolutely no physical
evidence” linking him to the murder, Padilla retrieved ammunition from
appellant’s apartment consistent with the bullets recovered from the crime
scene.

Given this evidence, a
reasonable trier of fact could have concluded that appellant kicked down the
complainant’s door and shot him. 
Accordingly, we hold that the evidence is sufficient to support
appellant’s conviction.

We overrule
appellant’s first point of error.

 

Lesser-Included Offense

          In
his second point of error, appellant argues that the trial court erred in denying
his request to instruct the jury on the lesser-included offense of murder
because “there was some evidence that appellant was only guilty of murder and
not capital murder.”

We use a two-step analysis to determine whether an appellant
is entitled to a lesser-included offense instruction.  Hall
v. State,
225 S.W.3d 524, 528 (Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d
666, 672–73 (Tex. Crim. App. 1993). 
First, an offense is a lesser-included offense if (1) it is established
by proof of the same or less than all the facts required to establish the
commission of the offense charged; (2) it differs from the offense charged only
in the respect that a less serious injury or risk of injury to the same person,
property or public interest suffices to establish its commission; (3) it differs
from the offense charged only in the respect that a less culpable mental state
suffices to establish its commission; or (4) it consists of an attempt to
commit the offense charged or an otherwise included offense.  Tex. Code Crim. Proc. Ann. art.
37.09 (Vernon 2011).  We compare the
elements of the offense as they are alleged in the indictment or information
with the elements of the potential lesser-included offense.  Hall, 225 S.W.3d at 535–36.

          Second, some
evidence must exist in the record that would permit a rational jury to find the
defendant is guilty only of the lesser offense, if he is guilty at all.  Hall, 225 S.W.3d at 536; Salinas v.
State,
163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855 S.W.2d
at 672–73.  There must be some evidence
from which a rational jury could acquit the appellant of the greater offense
while convicting him of the lesser included offense.  Moore v. State, 969 S.W.2d
4, 8 (Tex. Crim. App. 1998).  We may not
consider whether the evidence is credible, controverted, or in conflict with
other evidence.  Id.
 Anything more than a scintilla of
evidence entitles a defendant to a lesser charge.  Hall, 225 S.W.3d at 536.

Because the State concedes that
murder is a lesser-included offense of capital murder, we address only the
second prong by examining whether the evidence would allow a rational jury to
find, if appellant was guilty, that he was guilty only of murder.  See id.  The indictment asserted that appellant, in
the course of committing burglary, intentionally caused the death of the
complainant.  For appellant to be guilty
only of murder, the jury would have to find that he shot the complainant
without committing burglary.  See Tex. Pen. Code Ann. §
19.03(a)(2) (defining capital murder to include murder “in the course of
committing . . . burglary”).  Although appellant asserts that
the testimony of Gutierrez and Rodriguez “raised the issue” for a murder
charge, he cites to no specific testimony indicating that appellant did not
commit a burglary in the course of shooting the complainant.  Furthermore, Gutierrez testified that he
witnessed appellant kick down the front door and shoot the complainant, and
Rodriguez testified that he witnessed appellant leave the apartment immediately
after the shooting.  Neither testimony
indicates that appellant did not enter the apartment or entered the apartment
consensually.  At trial, appellant took
the position that he did not commit the offense at all, and there is no
evidence that the perpetrator of the offense shot the complainant without
committing burglary.  Thus, there is no
evidence in the record from which a rational jury could have convicted
appellant only of murder and not of capital murder.  Accordingly, we hold that the trial court did
not err in denying appellant’s request to instruct the jury on the lesser-included
offense of murder.

We overrule appellant’s second point
of error.

Improper Jury Argument

          In his third point of error, appellant
argues that the trial court erred in overruling his objection to the State’s
argument during the guilt phase of trial because the prosecutor “sought to
inject her personal opinion regarding the culpability of [a]ppellant.” 

          Proper
jury argument is generally limited to (1) summation of the evidence presented
at trial, (2) reasonable deductions drawn from that evidence, (3) answers to
opposing counsel’s argument, and (4) pleas for law enforcement.  Westbrook v. State, 29 S.W.3d 103, 115 (Tex.
Crim. App. 2000) (en banc); Swarb v. State, 125 S.W.3d
672, 685 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d).  The trial court has broad discretion in
controlling the scope of closing argument.  Lemos v. State, 130 S.W.3d 888, 892 (Tex. App.—El Paso
2004, no pet.); see Herring v. New York, 422 U.S. 853, 862–63, 95 S. Ct.
2550, 2555–56 (1975).  The State is
afforded wide latitude in its jury arguments and may draw all reasonable, fair,
and legitimate inferences from the evidence.  Allridge v. State, 762 S.W.2d
146, 156 (Tex. Crim. App. 1988).  

          Appellant
complains that in the following excerpt from closing argument, the prosecutor
injected her “personal opinion” concerning the testimony of Rodriguez:

And
you know he’s been scared from the very beginning.  My gosh, look how long it took them to be able
to track him down.  Is that the action of
somebody who’s looking to get somebody in trouble?  Don't you think he would have stuck around if
he wanted to get the defendant in trouble and say: I know, I know who it was.  It was Juan.  It was Juan.  That’s not what he did. He tried to hide. He
didn’t want to be involved in this, because he knew this man was dangerous . .
. 

 

          A prosecutor
may argue her opinions “concerning
issues in the case so long as the opinions
are based on the evidence in the record and not as constituting unsworn
testimony.”  McKay v. State, 707 S.W.2d
23, 37 (Tex. Crim. App. 1985) (en banc). 
Rodriguez testified that after the shooting, he “got scared” because
“when a person commits a crime and you are there, they are going to kill you
also, so you don’t say anything.”  Officer
Padilla testified that, during their interview, Rodriguez appeared “scared,
like he was reluctant to get involved,” and his demeanor “did not change
throughout” the interview.  Thus, even if
classified as opinion, the State’s argument was based on permissible reasonable
deductions from the evidence.  See Westbrook, 29 S.W.3d at 115.  Accordingly, we hold that the trial court did
not err in overruling appellant’s objection to the State’s closing argument.

          We
overrule appellant’s third point of error.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Pen. Code Ann. § 19.03 (Vernon 2011).